F I L E D
Clerk
District Court

AUG 2 8 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# UNITED STATES DISTRICT COURT

## DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>               Plaintiff,<br><br>     v.<br><br>JIN, Ying Min<br><br>               Defendant. | Case No.:  **CR 08 - 0 0 0 2 1**<br><br>**COMPLAINT**<br><br>21 U.S.C. §§ 841(a)(1) and (b)(1)(C)<br>Distribution of a Controlled Substance<br>(Count 1)<br><br>21 U.S.C. § 860<br>Distribution of a Controlled Substance<br>Near Schools or Colleges<br>(Count 2) |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF:

## COUNT ONE
### (Distribution of a Controlled Substance)

That on or about August 27, 2008, in the District of the Northern Mariana Islands, JIN, Ying Min, the defendant, did knowingly and intentionally distribute a controlled substance, to wit, approximately 0.4 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C).

**COUNT TWO**

(Distribution of a Controlled Substance Near a School or College)

That on or about August 27, 2008, in the District of the Northern Mariana Islands, JIN, Ying Min, the defendant, did knowingly and intentionally distribute or manufacture a controlled substance, to wit, 0.4 grams of methamphetamine, a Schedule II controlled substance, within 1,000 feet of a school, in violation of Title 21, United States Code, Section 860(a).

COMPLAINANT FURTHER STATES:

1.    I am a Special Agent with the DEA and have been so employed for about ten years. I am assigned to the DEA's Saipan office, located in the Commonwealth of the Northern Mariana Islands. The following is based on my own investigation or was provided to me by other law enforcement officers who participated in and are familiar with this investigation.

2.    Between June 2008 and August 2008, the DEA's Saipan office received numerous faxes from an anonymous source of information (SOI) regarding a Chinese methamphetamine trafficker identified in the faxes as "Li." All of these faxes indicated that "Li" used cellular telephone number (670) 483-3901 to conduct his methamphetamine trafficking business. Several of these faxes also indicated that "Li" lived on the second floor of an abandoned store located across the street from the Turnkey Housing Development in San Jose Village, Tinian, MP. As described in paragraph 8, *infra*, "Li" was later identified as JIN, Ying Min.

3.    On August 27, 2008, at approximately 8:10 a.m., agents and officers from the Saipan DEA office and the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS) met with a CNMI DPS Confidential Source (CS) at a pre-arranged location on Tinian.  The CS stated that s/he could purchase methamphetamine from JIN and s/he could call JIN on his (JIN's) cellular telephone to arrange the purchase.[1]  At approximately 8:13 a.m., Task Force Officer (TFO) Daniel Punimata and DPS Det. Peter Camacho searched the CS's person and vehicle for any contraband, weapons or large amounts of currency with negative results.

4.    At approximately 8:23 a.m., the CS, at the direction of me and DPS Cpt. Sylvestre Palacios, placed a recorded telephone call to JIN at telephone number (670) 483-3901.  JIN did not answer the telephone.  The CS stated that s/he believed that JIN was sleeping, and s/he could go to JIN's residence in San Jose Village and wake him. SA Byerley then equipped the CS with a digital recording and transmitting device, and surveillance agents followed the CS to JIN's residence in San Jose Village.

5.    When the CS arrived at JIN's residence, surveillance agents saw the CS walk towards the stairs that lead to JIN's residence, located on the second floor of an abandoned store in San Jose Village, and out of sight of the surveillance team.  Over the transmitting device, surveillance agents heard the CS make contact with JIN and ordered $100 to $150 of methamphetamine from him.  The CS told JIN that s/he would call him later that morning to pickup the methamphetamine.  Surveillance agents then

---

[1]    To my knowledge, this CS has never provided false or misleading information to law enforcement officials. Furthermore, the CS's information regarding JIN's methamphetamine trafficking activities were independently corroborated by the anonymous faxes received by the DEA Saipan office, as well as through information obtained from other CS's working with CNMI DPS detectives.

watched the CS come down the stairs and get back into his/her vehicle. Surveillance agents then followed the CS back to the pre-arranged location. When the CS arrived at the pre-arranged location, SA Daniel Holcomb and TFO Alfred Celes searched the CS's person and vehicle again for any contraband, weapons or large amounts of currency with negative results.

6.      At approximately 9:48 a.m., the CS, at the direction of me and Cpt. Palacios, placed another recorded telephone call to JIN at telephone number (670) 483-3901. The CS told JIN that he wanted to pick up the methamphetamine that he ordered earlier, and JIN directed the CS to meet him inside a video poker business located in San Jose Village. DPS Det. Camacho then handed the CS a digital recorder and transmitting device, and SA Holcomb handed the CS $140.00 of official government funds to purchase the methamphetamine. Surveillance agents then followed the CS from the pre-arranged location to a video poker business located in San Jose Village.

7.      At approximately 10:05 a.m., surveillance agents watched the CS park his vehicle outside a video poker business in San Jose Village and walk inside. Over the transmitting device, surveillance agents heard the CS make contact with JIN inside the poker business. At approximately 10:06 a.m., surveillance agents saw the CS walk out of the poker business and get back into his vehicle. Surveillance agents then followed the CS away from the poker business and back to the pre-arranged location. At the pre-arranged location, SA Byerley and Det. Camacho retrieved a crushed, glass-like substance contained in a small ziplock bag and wrapped in a piece of toilet paper with the writing, "1 x 100." SA Byerley and Det. Camacho also retrieved a crushed, glass-

like substance contained in a cut-off plastic straw from the CS. The CS told SA

Byerley and Det. Camacho that JIN sold him/her both packages inside the video poker

business. SA Byerley and Det. Camacho then searched the CS's vehicle for any other

contraband, weapons or large amounts of currency with negative results. Agents later

field-tested and weighed the crushed, glass-like substance contained in each of the

packages retrieved from the CS, and the substance tested positive for methamphetamine

and weighed approximately 0.4 grams.

8.    At approximately 10:09 a.m., DPS Cpt. Palacios and Det. Antonio Borja

entered the video poker business and arrested JIN. Cpt. Palacios and Det. Borja

transported JIN to a pre-arranged location. At the pre-arranged location, SA Holcomb

and TFO Daniel Punimata searched JIN incident to his arrest. During the search, SA

Holcomb and TFO Punimata found the $140.00 of official government funds that the

CS used to purchase the methamphetamine from JIN. SA Holcomb and TFO Punimata

also found an additional 2.6 grams of a crushed, glass-like substance in JIN's wallet and

left front pants pocket. Agents later field-tested this substance, and it tested positive for

methamphetamine. SA Holcomb and TFO Punimata also found JIN's passport and

copies of his social security card in his pants pocket and wallet.

9.    Shortly after searching JIN, SA Holcomb, in the presence of TFO

Punimata, contacted a Chinese language translator on his cellular telephone and placed

the translator on speaker phone. Through the translator, SA Holcomb read JIN his

Miranda warning. JIN stated that he understood the Miranda warning, and he agreed to

answer some questions. JIN stated that he knew the substance he delivered to the CS

earlier in the day was methamphetamine. JIN stated that he obtained the methamphetamine from a source of supply (SOS) on Saipan. JIN stated that this SOS contacted him from different telephone numbers every few days to determine if JIN needed additional methamphetamine to sell on Tinian. JIN stated that when his SOS called, he would tell his SOS how much methamphetamine he needed. JIN stated that the SOS then dispatched a courier to Tinian with the methamphetamine. JIN stated that he last spoke to his SOS approximately five days ago, and that his SOS had sent a courier to Tinian with additional methamphetamine for JIN.

10.     After interviewing JIN, Tinian DPS detectives transported JIN to the Tinian DPS office, where they booked him into custody pending transport to Saipan. After Tinian DPS detectives transported JIN to the Tinian DPS office, SA Holcomb and SA Byerley returned to the video poker business where JIN sold the methamphetamine to the CS. SAs Holcomb and Byerley noted that the video poker business is located less than 1,000 feet from the Tinian Grace Christian Academy School.

//

//

//

11.    Based on the foregoing information, there is probable cause to believe that JIN has violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 860.

MICHAEL BYERLEY, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 28th day of August, 2008.

3:00 pm

ALEX R. MUNSON
UNITED STATES DISTRICT COURT JUDGE